UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| O.F. MOSSBERG & SONS, INC.,<br>*Plaintiff*,<br><br>v.<br><br>TIMNEY TRIGGERS, LLC, and TIMNEY MANUFACTURING, INC.,<br>*Defendants*. | No. 3:12-cv-00198 (VAB) |

**RULING AND ORDER ON MOTION TO DECLARE THIS CASE EXCEPTIONAL**

Timney Triggers, LLC's, and Timney Manufacturing, Inc. (together, "Defendants" or "Timney") have moved to declare this case exceptional under 35 U.S.C. § 285 in order to recover attorney's fees from O.F. Mossberg & Sons, Inc. ("Mossberg" or "Plaintiff) in this voluntarily dismissed patent infringement case. Mot. to Declare Case Exceptional ("Def.'s Mot."), ECF No. 89.

For the following reasons, this motion is **DENIED**.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

Timney "manufactures and sells a popular range of specialized aftermarket gun triggers." Vehr Decl. ¶¶ 4–5, Mot. to Declare Case Exceptional, Ex. A, ECF No. 89-2. Those triggers are "compatible with weapons sold by a variety of manufacturing brands, including Mossberg, Remington, Winchester, FN Herstal, and others." *Id.* ¶ 5. Mossberg is reportedly America's largest firearm manufacturer. Opp. to Mot. to Declare Case Exceptional ("Pl. Opp."), ECF No. 90.

On November 13, 2007, the United States Patent and Trademark Office ("USPTO") issued U.S. Patent No. 7,293,385 ("the '385 Patent"), entitled "Modular Trigger Group for

1

Firearms and Firearm Having a Modular Trigger Group," to its inventor. Mossberg Timeline, Opp. to Mot. to Declare Case Exceptional ("Pl. Opp."), Ex. A, ECF No. 90-1. The patent application included 17 Claims. Def.'s Mot. at 5. On September 22, 2011, Mossberg bought the '385 Patent. Pl. Opp. at 3; Bartozzi Decl. at 5.

On February 12, 2012, Mossberg filed its original Complaint against Timney for patent infringement. Compl., ECF No. 1. On May 30, 2012, Mossberg filed an Amended Complaint, claiming that Timney had infringed on the '385 Patent. Compl. ¶ 12, ECF No. 8. Mossberg alleged that the '385 patent "basically describes a modular trigger assembly which can be substituted for an existing trigger assembly within a firearm, such as an 'AR' style, semi-automatic rifle." *Id.* ¶ 13. Mossberg further alleged that Timney Triggers had made, used, offered to sell, or sold "specific modular trigger assemblies (for firearms) that are covered by the '385 patent." *Id.* ¶ 14.

On July 23, 2012, Timney filed a request for *inter partes* reexamination of the '385 Patent with the United States Patent and Trademark Office ("USPTO"), claiming, among other things, that the '385 Patent was invalid because of prior art patents including U.S. Patent No. 4,671,005 (the "Jewell Patent").[1] ECF Nos. 24, 25; *see also* Def.'s Mot. at 6. The USPTO granted the request for reexamination, and on October 12, 2012, Judge Stefan Underhill granted a motion to stay the case pending the USPTO's reexamination determination. ECF No. 37.

---

[1] Under 35 U.S.C. § 311, "any third-party requester at any time may file a request for *inter partes* reexamination by the [USPTO] of a patent on the basis of any prior art cited under the provision of section 301. The request shall be in writing, include the identity of the real party in interest . . . and set forth the pertinency and manner of applying cited prior art to every claim for which reexamination is requested." An *inter partes* reexamination aims "to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983); *see also* Roger Shang, Yar Chaikovsky, *Inter Partes Reexamination of Patents: An Empirical Evaluation*, 15 Tex. Intell. Prop. L.J. 1, 2 (2006) ("The inter partes reexamination procedure was created by Congress in 1999 as a litigation alternative to challenge a patent's validity. . . . Inter partes reexamination owes its lineage to ex parte reexamination, which was introduced by Congress in 1980 in the Reexamination Act.").

As part of the *inter partes* reexamination, the USPTO ruled that Claims 3 and 7 were patentable over prior art cited by Timney and therefore were not subject to reexamination. Status Report at 2, ECF No. 44. The Examiner then rejected claims 1–2, 5–6, and 8–10. *Id.* On December 7, 2012, Mossberg responded by cancelling the rejected claims and adding new ones, which Mossberg asserted were clearer. *Id.* at 2–3. On June 14, 2013, the Director for the Office of Patent Legal Administration, Officer of the Deputy Commissioner for Patent Examination Policy, issued a final agency action finding that the USPTO lacked jurisdiction to conduct reexamination on the claims because the original request for *inter partes* reexamination had failed to identify the real party in interest. *Id.* at 3–4.

On September 9, 2013, Mossberg moved to lift the stay in this Court. ECF No. 43. Timney opposed the motion and stated that it would file another request for reexamination. ECF No. 60. The Court maintained the stay. ECF No. 62.

On April 3, 2014, Timney filed a request with the USPTO for an *ex parte* reexamination.[2] Status Report, ECF No. 61. The USPTO granted the request for reexamination and then rejected every claim based on prior art cited by Timney. *Id.* at 2–3; *see also id.* Ex. C, ECF No. 61-3

---

[2] Under 35 U.S.C. § 301, "[a]ny person at any time may cite to the [Patent] Office in writing (1) prior art consisting of patents or printed publications which that person believes to have a bearing on the patentability of any claim of a particular patent; or (2) statements of the patent owner filed in a proceeding before a Federal court or the Office in which the patent owner took a position on the scope of any claim of a particular patent." *See also* 35 U.S.C. § 302 ("Any person at any time may file a request for reexamination by the Office of any claim of a patent on the basis of any prior art cited under the provisions of Section 301. . . . Unless the requesting person is the owner of the patent, the Director promptly will send a copy of the request to the owner of record of the patent.").
    Similar to *inter partes* review, "any person can request an *ex parte* reexamination of a patent," but "once the request is submitted, the third party's role is highly circumscribed." *Synopsys, Inc. v. Matal*, 280 F. Supp. 3d 823 (E.D. Va. 2017); *see also* Shang and Chaikovsky, *Inter Partes Reexamination of Patents, supra,* at 3 ("By enacting the ex parte reexamination statute, Congress sought to 'strengthen investor confidence in the certainty of patent rights by establishing a system of administrative reexamination of doubtful patents, and without recourse to expensive and lengthy infringement litigation.'") (quoting *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 976 (Fed. Cir. 1986) (citing H.R. Rep. No. 96-1307, at 3–4, as reprinted in 1980 U.S.C.C.A.N. 6460, 6462-6463)). *Inter partes* review "gives a third party challenger the ability to participate more extensively in the patent review process" compared to *ex parte* reexamination, including that the parties engage in discovery, motions practice, and witness examinations. *Synopsys, Inc.*, 280 F. Supp. 3d at 826 (citing 37 C.F.R. § 1.510(b)(6)).

(finding Claims 1–10 unpatentable). On July 7, 2014, Mossberg filed an Amendment in which it cancelled Claim 10, presented Claims 11–15 for consideration, and argued that Claims 1–9 and 11–15 were patentable. Status Report at 3, ECF No. 61. On August 20, 2014, the USPTO found that Claims 1–9 and 11–15 were patentable and confirmed that Claim 10 was cancelled. *Id.*

On September 8, 2015, Timney filed a second request for an *ex parte* reexamination of the '385 Patent, with additional prior art that had not been considered in the previous reexamination. *Id.* at 4. The USPTO granted the second request. *Id.* In a First Office Action, it rejected Claims 1–9 and 11–15 as not patentable. *Id.* Mossberg filed a formal Amendment, cancelling Claim 1 and arguing that the remaining Claims should be found patentable. *Id.* In a Second Office Action, the Examiner continued to reject Claims 2–8 and 11–15. *Id.* Mossberg filed another Amendment, and the Examiner issued a Third Office Action, finding that Claims 3, 7, and 11–15 were patentable, and rejecting Claims 2, 4–6, 8, and 9. *Id.* Mossberg filed a third Amendment, cancelling Claims 2 and 4, and arguing that Claims 5, 6, 8, and 9 were patentable. *Id.* at 5.

On December 10, 2015, Timney filed a third request for *ex parte* reexamination on Claims 3, 7, and 11–15. Timeline, Ex. A, Opp. to Mot. to Declare Case Exceptional. On May 23, 2016, the USPTO found that Claims 3, 5–9, and 11–15 were not patentable. ECF No. 89-18.

On September 20, 2016, the USPTO released an Office Action finding all claims unpatentable, citing Taiwan Patent 409847 (the "Li Patent"). *Id.* On December 29, 2016, the USPTO issued a Final Rejection of All Claims, citing the Li Patent. ECF No. 89-21. In that decision, the USPTO found:

> Claims 3, 5–9 and 11–15 stand rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over Taiwan 490,847 to Li in view of the AR-15 Schematics, U.S. Patent No. 4,671,005 to Jewell, Benelli

>   Montefeltro Super 90 (American Rifleman Publication) and U.S.
>   Patent No. 4,103,586 to Tollinger.

ECF No. 89-21 at 3.

On February 21, 2017, Mossberg appealed to the Patent Trial and Appeal Board. Timeline, Ex. A., Opp. to Mot. to Declare Case Exceptional. The Appeal Board affirmed. The Appeals Board reexamined Claims 3, 5–9, and 11–15, as Claims 1, 2, and 4 had been cancelled. PTAB Decision at 2, ECF No. 89-22. As to Claim 3, the Appeals Board agreed with the Examiner that "the claimed invention merely substitutes the selector/positioning spring attachment arrangement of Li with the bushing/pin attachment arrangement of Tollinger." *Id.* at 8. As to Claims 5, 6, 8, and 9, the Appeals Board found, in a section entitled "Rejections 2 and 3 Based on Jewell," that those claims "stand rejected as obvious over Jewell in view of Bielfeldt, Biller, Walker, AR-15 Schematics, and Li, while claims 3, 7, and 11–15 stand rejected as obvious over Jewell in view of Bielfeldt, Biller, Walker, American Rifleman, as evidenced by Benelli Owner's Manual, Tollinger, AR-15 Schematics, and Li." *Id.* at 11.

On September 25, 2017, Timney Triggers notified this Court that the Patent Trial and Appeal Board issued a decision, and that no claims in the '385 patent had survived reexamination or the appeal to the Board. Notice, ECF No. 77.

On October 18, 2017, O.F. Mossberg filed a notice of voluntary dismissal of the case under Federal Rule of Civil Procedure 41(a)(1)(A)(i). ECF No. 78.

On January 5, 2018, Timney Triggers filed a motion to declare this case exceptional under 35 U.S.C. § 285, seeking attorneys' fees. Mot. to Declare Case Exceptional ("Def.'s Mot."), ECF No. 89. O.F. Mossberg opposed the motion. ECF No. 90.

On May 11, 2018, Timney Triggers filed a supplemental notice of additional authority. Supp. Notice, ECF No. 92. On May 20, 2018, O.F. Mossberg moved to strike the notice of

additional authority. Mot. to Strike, ECF No. 93. On September 10, 2018, the Court denied the motion to strike the notice of additional authority. Order, ECF No. 100. On September 11, 2018, the Court held oral argument on the motion to declare the case exceptional. ECF No. 101.

## II. STANDARD OF REVIEW

Under 35 U.S.C. § 285, in exceptional cases, a court may award reasonable attorney fees to the prevailing party in a patent infringement case. 35 U.S.C. § 285; *see also Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S. Ct. at 1756.

"District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* (footnote omitted). In the "context of the Copyright Act, '[t]here is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations [the Supreme Court has] identified.'" *Id.* (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)).

## III. DISCUSSION

"Under 35 U.S.C. § 285 and Rule 54(d), Fed. R. Civ. P., attorney fees and costs can be awarded to a prevailing party." *Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1319 (Fed. Cir. 2004). A prevailing party in patent litigation is a party that receives "'at least some relief on the merits,' which 'alters . . . the legal relationship of the parties.'" *Id.* at 1320 (quoting *Former Employees of Motorola Ceramics Prods. v. United States*, 336 F.3d 1360, 1364 (Fed. Cir. 2003)). "[A]s a matter of law, a party who has a competitor's patent declared invalid meets the definition

of 'prevailing party.'" *Manildra Mill. Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1183 (Fed. Cir. 1996).

An exceptional case is distinguishable from similar cases by either "the substantive strength of a party's litigating position" or the unreasonable way in which the case was litigated. *Octane Fitness LLC*, 134 S. Ct. at 1756. There is no specific evidentiary burden imposed on the moving party; Section 285 "demands a simple discretionary inquiry[.]" *Id.* at 1758 (holding that Section 285 does not "require proof of entitlement to fees by clear and convincing evidence").

This case is not exceptional under 35 U.S.C. § 285. Timney is not a prevailing party, but even if it was, this lawsuit does not stand out as frivolous or malicious, and was not litigated in an unreasonable manner.

### 1. Prevailing Party Analysis

To be the prevailing party in a patent case, "one must receive at least some relief on the merits, which alters . . . the legal relationship of the parties." *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1304 (Fed. Cir. 2018) (quoting *Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1320 (Fed. Cir. 2004)). Relief on the merits requires at least "that the party obtain a court order materially changing the legal relationship of the parties." *Id.* (quoting *Rice Servs., Ltd. v. United States*, 405 F.3d 1017, 1023 (Fed. Cir. 2005)). The Supreme Court has clarified, in the employment context:

> Common sense undermines the notion that a defendant cannot 'prevail' unless the relevant disposition is on the merits. Plaintiffs and defendants come to court with different objectives. A plaintiff seeks a material alteration in the legal relationship between the parties. A defendant seeks to prevent this alteration to the extent it is in the plaintiff's favor. The defendant, of course, might prefer a judgment vindicating its position regarding the substantive merits of the plaintiff's allegations. The defendant has, however, fulfilled its primary objective whenever the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision. The

7

> defendant may prevail even if the court's final judgment rejects the
> plaintiff's claim for a nonmerits reason.

*CRST Van Expedited, Inc. v. E.E.O.C.*, 136 S. Ct. 1642, 1651 (2016) ("Congress has included the term 'prevailing party' in various fee-shifting statutes, and it has been the Court's approach to interpret the term in a consistent manner.'"). Timney claims prevailing party status under 35 U.S.C. § 285 because the USPTO decision invalidated the '385 Patent, even though Mossberg voluntarily dismissed its patent infringement lawsuit without prejudice under Rule 41(a)(1)(A). The Court disagrees.

After *CRST*, the relevant inquiry "is not limited to whether a defendant prevailed on the merits, but also considers whether the district court's decision—'a judicially sanctioned change in the legal relationship of the parties'—effects or rebuffs a plaintiff's attempt to effect a 'material alteration in the legal relationship between the parties.'" *Raniere*, 887 F.3d at 1306 (quoting *CRST*, 136 S. Ct. at 1646); *see also Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 605 (2001) (rejecting "'catalyst theory,' which posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct" and noting that, among other things, "enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees").

Timney argues that it is the prevailing party under 35 U.S.C. § 285 because it "successfully challenged the '385 patent through its Requests for Reexamination, and obtained a declaration of invalidity," rendering Timney "'free from risk of infringement and without the necessity of obtaining a license,'" *id.* at 23–24 (quoting *Manildra Mill Corp.*, 76 F.3d at 1183), from Mossberg's lawsuit. Timney also argues that, even if the Court "does not expressly

determine that [Timney] is a prevailing party, the court has 'broad' discretion to award attorney fees to a defendant following the reopening of a case in which the district court stayed the action pending a reissue examination that resulted in the PTO canceling the patent." *Id.* (citing *PPG Indus., Inc. v. Celanese Polymer Specialties Co., Inc.*, 840 F.2d 1565, 1569 (Fed. Cir. 1988)).

Mossberg responds that Timney is not a prevailing party under Section 285 because "Mossberg voluntarily dismissed the Action without prejudice pursuant to Rule 41(a)(1)(i)." Opp. to Mot. for Fees at 1, 7, ECF No. 90. Mossberg argues that, "for a defendant to be said to have 'prevailed' as the result of a Rule 41 dismissal, the dismissal must have sufficient judicial imprimatur to constitute a judicially sanctioned change in the legal relationship of the parties." *Id.* at 7–8 (quoting *RFR Indus., Inc. v. Century Steps, Inc.*, 477 F.3d 1348, 1353 (Fed. Cir. 2007)). The Court agrees.

A decision by the USPTO invalidating the '385 Patent, certainly altered the legal relationship of the parties, and prompted Mossberg to dismiss this lawsuit, but a Rule 41 dismissal without prejudice is not a decision on the merits. Timney therefore cannot rightfully be considered to be a prevailing party under Section 285.

In *Raniere*, the court dismissed with prejudice because the plaintiff could not satisfy the requirements of standing. *Raniere*, 887 F.3d at 1308. The Federal Circuit affirmed because the "dismissal with prejudice . . . gave Appellees the full relief to which they were legally entitled," and found that, "to the extent any relief on the merits remains a necessary predicate to prevailing-party status after *CRST*, the dismissal with prejudice here was such a judgment." *Id.*

A dismissal without prejudice under Rule 41, however, cannot result in a party having prevailing party status. As the U.S. Supreme Court held long ago, when a party dismisses an action without prejudice under Rule 41(a)(1), this dismissal "does not operat[e] as an

9

adjudication upon the merits . . . ." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990). In other words, unlike in *Raniere* which involved a Rule 41 dismissal with prejudice, a Rule 41 dismissal without prejudice is not relief on the merits, the "necessary predicate to prevailing-party status after CRST." *Raniere*, 887 F.3d at 1308.

Indeed, after *Cooter & Gell*, the Supreme Court reinforced this principle when it held that: "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Buckhannon Bd. and Care Home, Inc.*, 532 U.S. at 605. The Supreme Court then noted that: "Our precedents thus counsel against holding that the term 'prevailing party' authorizes an award of attorney's fees *without* a corresponding alteration in the legal relationship of the parties." *Id.*

As a result, in the Federal Circuit, "a plaintiff's voluntary dismissal without prejudice pursuant to Rule 41(a)(1)(i) does not bestow 'prevailing party' status upon the defendant." *RFR Indus., Inc. v. Century Steps, Inc.*, 477 F.3d 1348, 1353 (Fed. Cir. 2007). "[A] plaintiff's voluntary dismissal under rule 41(a)(1)(i) is not "judicially sanctioned" because it does not require a court order, nor does the court have the power or the discretion to place any conditions on it." *Id.*; *see Inland Steel Co.*, 364 F.3d at 1320 (recognizing that a court judgment in a party's favor on the issue patent infringement constituted "relief on the merits"); *see also Manildra Mill. Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1183 (Fed. Cir. 1996) ("A judicial declaration that one is free from another's right to exclude alters the legal relationship between the parties. The patentee no longer can enforce his patent against the would-be infringer litigant, or any other would-be infringer."). In *RFR Indus. Inc.*, there was no entitlement "to attorney fees under 35 U.S.C. § 285." *RFR Indus., Inc.*, 477 F.3d at1353.

Likewise, while the USPTO's decision that the claims for the '385 were unpatentable affected the viability of Mossberg's patent infringement case – indeed, effectively ending it – this lawsuit's Rule 41 dismissal without prejudice is not a decision on the merits and thus cannot be a judicial declaration altering the legal relationship between the parties. Timney therefore is not a prevailing party.

## 2. Exceptional Case Analysis

Even if Timney was a prevailing party, this case is not "exceptional," and Timney would not otherwise be entitled to an award of attorneys' fees.

"[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S. Ct. at 1756. The Supreme Court held in *Octane Fitness* that the Federal Circuit's previous standard, under *Brooks Furniture Mfg., Inc. v. Dutailier Intern., Inc.*, 393 F.3d 1378 (Fed. Cir. 2005), was "unduly rigid and impermissibly encumber[ed] the statutory grant of discretion to district courts." *Octane Fitness*, 134 S. Ct. at 1755.

The Supreme Court still required, however, that a district court find that the case is exceptional on a case-by-case basis. *Id.* at 1756 n.6 (citing non-exclusive list of factors in a Copyright Act case that included "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence") (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n. 19 (1994)); *see also Rothschild Connected Devices Innovations, LLC v. Guardian Protection Servs., Inc.*, 858 F.3d 1383, 1387 (Fed. Cir. 2017) ("In weighing the evidence, the district court may consider, among other factors, 'frivolousness, motivation, objective

11

unreasonableness (both in the factual and legal components of the case)[,] and the need in particular circumstances to advance considerations of compensation and deterrence.'") (quoting *Octane Fitness*, 134 S. Ct. at 1756 n.6).

"Under *Octane*, a district court may consider 'the substantive strength of a party's litigating position' when determining if the case 'stands out from others.'" *Stone Basket Innovations, LLC v. Cook Medical LLC*, 892 F.3d 1175, 1178 (Fed. Cir. 2018) (quoting *Octane Fitness*, 134 S. Ct. at 1756). In addition, while "'motivation' to harass or burden an opponent may be relevant to an 'exceptional case' finding, . . . motivation to implement the statutory patent right by bringing suit based on a reasonable belief in infringement is not an improper motive." *Checkpoint Sys. Inc. v. All-Tag Security S.A.*, 858 F.3d 1371, 1375 (Fed. Cir. 2017). "[F]ee awards are not to be used 'as a penalty for failure to win a patent infringement suit'" and rather, "[t]he legislative purpose behind § 285 is to prevent a party from suffering a 'gross injustice.'" *Id.* at 1376 (quoting *Octane Fitness*, 134 S. Ct. at 1753).

Timney argues that this is an exceptional case "because [Mossberg] engaged in *every* type of behavior that Courts have deemed legally exceptional," including asserting an invalid patent, engaging in bad faith in settlement discussions[3], and engaging in "'[a]n overall vexatious

---

[3] As one basis for claiming this case to be exceptional, Timney seeks to introduce conduct alleged to have occurred during the course of settlement discussions with the Honorable William I. Garfinkel of this District. Any of this alleged conduct, however, likely would be inadmissible at trial under Rule 408 of the Federal Rules of Evidence. *See* Fed.R.Evid. 408 (prohibiting the introduction of evidence of "conduct or a statement made during compromise negotiations about the claim . . . ."). The Second Circuit has found such evidence inadmissible, even when the party moving for admission was in a lesser negotiating position and a great sum was at stake. *Sheng v. M&TBank Corp.*, 848 F.3d 78, 85 (2d Cir. 2017) (vacating a district court's order that rested on evidence that a bank would only re-instate a pregnant employee to her job if she withdrew her lawsuit because that offer was inadmissible under FRE 408); *see also*, *Olin Corp. v. Ins. Co. of N. Am.*, 603 F. Supp. 445, 449 (S.D.N.Y.), reargument on other grounds, 607 F. Supp. 1377 (S.D.N.Y. 1985) ("The purpose of the rule is to encourage full and frank disclosure between the parties in order to promote settlements rather than protracted litigation"). This Court therefore does not consider this proposed evidence sufficiently probative of Timney's exceptional case claim to warrant review.

litigation strategy'." *Id.* at 28–29, 32 (quoting *Monolithic Power Sys., Inc. v. 02 Micro Int'l Ltd.*, 726 F.3d 1359, 1367 (Fed. Cir. 2013), *cert denied*, 134 S. Ct. 1546 (2014)).

Mossberg responds that this case is not exceptional and claims not to have misled the USPTO, or engaged in abusive or bad faith tactics. *Id.* at 11. Mossberg also argues that Timney was a "blatant infringer," even if Mossberg's patent was eventually invalidated by the Li Patent. *Id.* at 15. Mossberg claims that its "good faith belief that the '385 patent was valid was confirmed twice by different panels of experienced patent examiners during the reexamination proceedings before the USPTO." *Id.* at 16. Mossberg also asserts that the Appeals Board's decision relied on the Li Patent, which was "previously unknown to both Mossberg and Timney," and that Mossberg did not know of the Li Patent when it filed its original lawsuit against Timney. *Id.* The Court agrees.

Timney has not shown that it suffered a "gross injustice" as the result of Mossberg's prosecution of this case. *See Checkpoint Sys. Inc.*, 858 F.3d at 1376; *see also Stone Basket Innovations, LLC*, 892 F.3d at 1182 (noting that, while it found that litigation was not exceptional under § 285, the holding "does not disturb the rule that 'a party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims.'") (quoting *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013)). In *Checkpoint*, the Federal Circuit reversed the district court's finding of an exceptional case where "[t]here was no representation by [the defendant] that the accused products were different from the tested products, and the district court did not so find," and "[t]here was no allegation of falsity or fraud or bad faith on the part of [the plaintiff] or its expert." *Id.*

The same is true here: Timney has not argued that its products do not infringe on the '385 Patent, but rather that the '385 Patent is invalid—a question on which the USPTO reached

several different conclusions while considering each claim before ultimately concluding that the Li Patent contained prior art invalidating the '385 Patent. *See, e.g.*, Appeals Board Decision at 8–10 (finding that '385 Patent is unpatentable based on Li, Tollinger, and Jewell); *see also id.* at 12 (noting argument that there have been "conflicting rulings" in the previous proceedings in this case but noting that the "Patent Owner does not establish on what basis the apparent change in position of the Patent Office during a reexamination is improper," and that "the inconsistency in reexaminations noted by the Patent Owner does not pertain to Rejection 1 which is based on the combination of Li in view of AR-15 Schematics, Jewell, American Riflemen, and Tollinger."). *See, e.g.*, *id.* at 6 (arguing that the '385 Patent is invalid because the Jewell Patent, U.S. Patent No. 4,671,005, existed before the '385 Patent). Given the numerous administrative proceedings necessary before the USPTO, Mossberg's patent infringement claim against Timney cannot be considered to be frivolous.

Indeed, while the USPTO ultimately invalidated the '385 Patent, it did so based in significant part on the Li Patent—a patent that Timney had not introduced during any of the previous reexamination proceedings. *See* PTAB Decision at 4, ECF No. 89-22. Timney therefore has failed to show that Mossberg asserted a patent infringement claim against Timney, while remaining willfully ignorant of prior art and failing to "conduct[] an analysis of any of the prior art . . . to form a belief as to whether that prior art would invalidate" the patent. *See Rothschild*, 858 F.3d at 1388; *see also Highmark Inc.*, 134 S. Ct. at 1749 ("Although questions of law may in some cases be relevant to the § 285 inquiry, that inquiry generally is, at heart, 'rooted in factual determinations[.]'") (quoting *Cooter & Gell*, 496 U.S. at 401).

Instead, it appears that neither Timney nor Mossberg knew of the Li Patent prior art that would invalidate the '385 Patent. Timney cannot support a claim that Mossberg was willfully

14

ignorant of prior art when Timney also did not know of the same prior art. *Cf. Rothschild*, 858 F.3d at 1388 (noting that the defendant had included the prior art in a safe harbor notice and cross-motion for attorney fees).

Moreover, before this Court, Mossberg's litigation tactics cannot be considered unduly burdensome or to have been conducted in bad faith. *Cf. Raniere*, 887 F.3d at 1301 ("The district court [] concluded that this case was exceptional because it stood out from other cases 'with respect to the unreasonable manner in which it was litigated'," including that the plaintiff introduced "untruthful testimony at the hearing on the motion to dismiss, demonstrat[ing] a pattern of obfuscation and bad faith"). In fact, there was very little litigation activity before this Court at all because Timney moved to stay the case while the reexaminations in the USPTO proceeded. *See* ECF No. 24 (Timney motion to stay); ECF No. 37 (Order granting motion to stay); ECF No. 43 (Mossberg motion to lift stay); ECF No. 55 (Mossberg motion to lift stay); ECF No. 62 (Order denying without prejudice motions to lift stay, ECF Nos. 43, 55); ECF No. 69 (Mossberg motion to lift stay); ECF No. 74 (Mossberg notice of withdrawal of motion to lift stay); ECF No. 78 (Mossberg Notice of voluntary dismissal).

Logically, dilatory or obfuscatory behavior during the course of a case should be evident to a court during the course of the litigation, not raised only after the case has concluded. *See SFA Systems, LLC v. Newegg Inc.*, 793 F.3d 1344, 1351 (Fed. Cir. 2015) ("'Because the district court lives with the case over a prolonged period of time,' . . . it is in a better position to determine whether a case is exceptional and it has discretion to evaluate the facts on a case-by-case basis.") (internal alterations and citation omitted) (quoting *Highmark Inc. v. Allcare Health Management System, Inc.*, 134 S. Ct. 1744, 1748 (2014)).

The stay allowed the parties to argue their cases before the USPTO as necessary, but because this litigation did not proceed very far beyond the filing of the Complaint, the Court has no basis to find bad faith or vexatious litigation strategies. *Cf. Raniere*, 887 F.3d at 1302 (noting that the plaintiff's conduct in court required the defendants to expend significant resources, "which the Court now finds were made in bad faith to vexatiously multiply these proceedings and avoid early dismissal").

As a result, the Court has no basis for finding this case to be exceptional and warranting the awarding of attorney's fees.

## IV. CONCLUSION

For the foregoing reasons, Timney's motion to declare this case exceptional is **DENIED**.

SO ORDERED this 14th day of September, 2018 in Bridgeport, Connecticut.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE